IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| ADVANCED CUSTOM BUILDERS, | ) | |
| L.L.C., | ) | Bankruptcy No. 09-02864 |
| | ) | |
|    Debtor. | ) | |

---

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| JEFFREY J. NOACK, | ) | |
| SHELLEY L. NOACK, | ) | Bankruptcy No. 10-00124 |
| | ) | |
|    Debtors. | ) | |

---

| | | |
|---|---|---|
| DAVID J. SCHARNHORST, | ) | |
| ELIZABETH L. SCHARNHORST, | ) | Adversary No.  10-09081 |
|    Plaintiffs, | ) |                 10-09082 |
| | ) | |
| vs. | ) | |
| | ) | |
| ADVANCED CUSTOM BUILDERS, | ) | |
| L.L.C. and JEFFREY J. NOACK, | ) | |
|    Defendants. | ) | |

**ORDER RE: COMPLAINT TO AVOID DISCHARGE**

      This matter came before the undersigned on July 19, 2011 for trial on the Complaint to Avoid Discharge.   Attorney John D. Freund appeared for Plaintiffs David and Elizabeth Scharnhorst.   Attorney Francis Wm. Henkels appeared for Debtors/Defendants Advanced Custom Builders, L.L.C. and Jeffrey Noack.   After the presentation of evidence and argument, the Court took the matter under advisement.   The time for filing briefs has now passed and this matter is ready for resolution.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Plaintiffs seek to except debt from discharge for fraud under § 523(a)(2)(A) and for willful and malicious injury under § 523(a)(6), based on Debtor Jeffrey Noack's conduct during the construction of their residence. They assert they can pierce the corporate veil between Advanced Custom Builders and Mr. Noack such that both parties are liable for damages. Debtors concede the construction contract was breached, but deny having any intent to defraud or injure Plaintiffs.

## FINDINGS OF FACT

Plaintiffs entered into a Building Agreement (the "Contract") with Advanced Custom Builders, L.L.C. (the "LLC") on December 4, 2007 for construction of a home for $627,000 at 20314 San Sebastian Drive, Dubuque, Iowa. Jeffrey Noack, the managing member of the LLC, drafted the contract and signed it. The Contract provides the LLC would be the general contractor on Plaintiffs' construction project and Plaintiffs would pay $12,000 down with subsequent draws of $95,000.

During the discovery process, Plaintiffs served Requests for Admissions on Debtors, see Ex. 2, to which Debtors have not responded. On December 3, 2010, the Court held a hearing on Plaintiffs' Motion to Compel discovery and gave Debtor until December 10, 2010 to fully comply with discovery requests. The Order further states: "Pursuant to rule, all requests for admissions not responded to in a timely manner are deemed admitted. See Ex. 1.

The Requests for Admissions, which are deemed admitted, include the following statements: the LLC never kept any minutes of meetings; it paid personal expenses of Debtor Jeffrey Noack and his wife which were not reimbursed; Mr. Noack was, at all times, the sole member of the LLC and was vested with sole authority to act on its behalf; and the LLC did not have a managing board or governing body. Plaintiff David Scharnhorst testified that the LLC did not have a separate facility. Mr. Noack worked out of a shop in the basement of his home. The LLC had no signage on Mr. Noack's vehicle, although it did have letterhead and business cards Mr. Noack used. Mr. Scharnhorst stated that Jeffrey Noack and the LLC were actually one and the same.

Pursuant to the Contract, construction of the home was to commence on March 1, 2008 and be substantially complete on September 1, 2008. Plaintiffs wanted to be able to move into the house about the time their children started school. Also, the parties discussed the possibility that the home could be entered into the annual Parade of Homes scheduled for mid-October. The beginning of construction was actually March 10, 2008. In mid-August, Debtor gave Plaintiffs a timeline, week by week, showing the home would be finished in early October. The home was not yet complete when the family moved in during Thanksgiving weekend in November 2008.

Although not specified in the Contract, Plaintiff David Scharnhorst testified that the parties' agreement was that he would pay Mr. Noack up to $95,000 upon receiving mechanics lien waivers substantiating that Mr. Noack had paid subcontractors that amount for their work on the home. Exhibit 6 is a list of payments and change orders under the Contract. The Contract is set out in Exhibit 3 and the change orders are set out in Exhibit 4.

Plaintiff testified that his construction lender informed him about the way the construction loan process worked. When Plaintiff got mechanics lien waivers from the general contractor, he would submit them to the Bank to receive a draw to pay the general contractor. Although not privy to the transactions between Mr. Noack and the subcontractors, Plaintiff believed that Mr. Noack would write checks to the subcontractors in order to get the lien waivers which Plaintiff needed to get the draw from the Bank.

The change orders of August 21, 2008 were necessary, in part, because a payment by Mr. Noack to All Seasons Heating and Cooling, a subcontractor on Plaintiffs' construction, was made with a check returned for insufficient funds. Mr. Scharnhorst testified that he received a certified letter from All Seasons stating that a $10,000 check from Mr. Noack had bounced. Because of this, All Seasons required that Plaintiffs individually contract with and be responsible to pay All Seasons Heating, rather than Mr. Noack. The change orders show that Mr. Noack gave Plaintiffs a $12,000 credit against the total construction cost for the loss of their deposit with All Seasons, and another $55,000 credit for the heating/cooling allowance in the Contract because Plaintiffs would be paying All Seasons directly.

By September 2008, it was obvious that the home was not ready for occupation and Plaintiffs realized that it could not be completed for the balance

3

remaining on the contract, approximately $29,600. In mid-October, several subcontractors contacted Plaintiffs because checks they received from Mr. Noack had bounced. Debtor had initially told the subcontractors that he was working on it and Plaintiffs didn't need to get involved. He issued more checks to cover the insufficient funds checks and asked the payees to run the checks through again. Eventually, several subcontractors remained unpaid and seven of them filed mechanics liens totaling $133,519.58.

Mr. Scharnhorst testified that he was very concerned about Debtors' ability to finance the project. When asked about where prior payments had gone if subcontractors were not paid, Mr. Noack said he had other bills to pay. Plaintiffs never learned where their funds went, whether it was to pay Mr. Noack's personal expenses or to finance other construction projects. Mr. Scharnhorst testified that this went against their agreement that the funds paid to Mr. Noack would be used to finance the construction on their home only, and not for other projects or personal needs.

After mid-October, the construction came to a halt because subcontractors were not being paid. Mr. Noack offered to continue acting as general contractor and give Plaintiffs a promissory note if Plaintiffs would pay the unpaid subcontractors and finance the remainder of the costs. He told Plaintiffs he was having cash flow problems, wasn't getting any new customers coming in, and was unable to get financing from any banks he had contacted.

Plaintiffs began to work on the home themselves with help from family and friends, and initially, from Mr. Noack. Mr. Scharnhorst acted as general contractor for the remainder of the construction and has been doing general labor on the home. Plaintiffs expended a total of $249,850.37, as documented in Ex. 8 and summarized in Ex. 7, for materials and services to complete the home to date. Some work on the home remains to be completed although Plaintiffs are finally getting to the point where they are almost done with the home.

Plaintiffs hired an attorney to help them address the problems with Mr. Noack and the mechanics liens. Eventually, three of the seven mechanics lien claimants filed suits to foreclose the liens. One of the claimants, Tri-State Concrete, also filed a civil suit against Plaintiffs. Plaintiffs were successful litigating these actions and the claimants were not allowed to enforce their liens. Plaintiffs have incurred attorney fees and expenses totaling $22,130.45 since November 2008.

4

The final payment Plaintiffs made to Mr. Noack was on September 25, 2008. Plaintiffs assert they learned of the conduct which they claim was fraudulent or willful and malicious under § 523(a) in mid-October 2008.   As a result of Mr. Noack's failure to pay subcontractors as promised, it was necessary for Plaintiffs to contract directly with subcontractors and pay for materials out-of-pocket, losing the benefits of contractors discounts.   In the end, the house they contracted to have built by Mr. Noack and the LLC for $627,000 has cost them approximately $824,000. This includes the total payments of $552,000 Plaintiffs made to Mr. Noack, plus their expenses of approximately $249,850 and attorney fees of $22,130.   They ask the Court for a judgment for damages of $271,980.82 as set out in Ex. 7 for costs and attorney fees, minus $29,601.61 remaining due on the original contract price, or $242,379.21.

## CONCLUSIONS OF LAW

Plaintiffs seek a judgment against both Advanced Custom Builders, L.L.C. and Jeffrey Noack for damages resulting from the construction of their home.   They also assert the judgment should be excepted from Jeffrey Noack's bankruptcy discharge for fraud or willful and malicious injury.   They argue that, although the LLC was the nominal general contractor, the corporate veil should be pierced such that Mr. Noack is personally liable for the damages.

## PIERCING THE CORPORATE VEIL

Piercing the corporate veil is a question of state law in the Eighth Circuit. Stoebner v. Lingenfelter, 115 F.3d 576, 579 (8th Cir. 1997).   Under Iowa law, "[t]he corporate veil may be pierced where the corporation is a mere shell, an alter ego of its controlling owner which served no legitimate business purpose.   Fraud is not a prerequisite for piercing the corporate veil."   Adam v. Mt. Pleasant Bank & Trust Co., 355 N.W.2d 868, 872 (Iowa 1984) (citations omitted).   The factors that would support piercing the corporate veil to hold an owner, shareholder, or officer liable were set out in In re Marriage of Ballstaedt, 606 N.W.2d 345, 349 (Iowa 2000), as follows:

> (1) the corporation is undercapitalized; (2) it lacks separate books; (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation; (4) the corporation is used to

5

promote fraud or illegality; (5) corporate formalities are not followed; or (6) the corporation is a mere sham.

The party seeking to pierce the corporate veil bears the burden of proof. HOK Sport, Inc. v. FC Des Moines, L.C., 495 F.3d 927, 935 (8th Cir. 2007). It need not prove all six factors but must prove at least one. Id. at 936; Fazio v. Brotman, 371 N.W.2d 842, 846 (Iowa App. 1985).

## DISCHARGEABILITY

Plaintiffs bear the burden to prove the elements of claims under 11 U.S.C. § 523(a) by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 285 (1991). Exceptions to discharge must be "narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code. These considerations, however, are applicable only to honest debtors." In re Van Horne, 823 F.2d 1285, 1287 (8th Cir.1987) (citations omitted).

### § 523(a)(2)(A)

A discharge does not discharge a debtor from any debt which was obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Five elements must be satisfied before a debt is excepted from discharge under § 523(a)(2)(A): (1) the debtor made false representations; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representations, Field v. Mans, 516 U.S. 59, 72 (1995); and (5) the creditor sustained the alleged injury as a proximate result of the representations having been made. In re Van Horne, 823 F.2d 1285, 1287 (8th Cir.1987); In re Swanson, 398 B.R. 328, 333 (Bankr. N.D. Iowa 2008).

### § 523(a)(6)

The Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In Kawaauhau v. Geiger, the Supreme Court affirmed an Eighth Circuit decision that a medical malpractice claim was dischargeable in bankruptcy. 523 U.S. 57 (1998). The Court held that "willful" means a "deliberate or intentional injury" not merely a "deliberate or intentional act that

6

leads to injury." Id. at 61. Also, the Court noted the similarity between the terminology used in § 523(a)(6) and common law intentional tort and stated that evidence of recklessness does not qualify as willfulness. Id. at 57–58. In In re Patch, 526 F.3d 1176, 1181 (8th Cir. 2008), the Eighth Circuit further stated that willfulness can be inferred if the debtor knew injury was "certain" or "substantially certain" to occur as a result of the conduct.

The "malicious" element requires the plaintiff to show that the debtor's conduct was targeted at the plaintiff, at least in the sense that the conduct was certain or almost certain to cause the plaintiff harm. In re Porter, 539 F .3d 889, 894 (8th Cir. 2008); In re Madsen, 195 F.3d 988, 989 (8th Cir. 1999). The mere violation of legal rights is not enough to show malice. In re Stage, 321 B.R. 486, 493 (B.A.P. 8th Cir. 2005); In re Mortensen, 415 B.R. 383, 391 (Bankr. S.D. Iowa 2009).

## CONSTRUCTION CONTRACTS

Numerous cases exist where contractors have discharged debts where they have acted negligently in the construction of a home but without the intent to deceive or injure. See In re Rodruck, 2010 WL 1740792, at *2 (Bankr. S.D. Iowa April 28, 2010) (collecting cases); In re Brown, 2004 WL 5851530, at *9 (Bankr. S.D. Iowa Jan 7, 2004) (collecting cases); In re Wade, 2004 WL 3019461, at *4-6 (Bankr. N.D. Iowa Dec. 29, 2004). Damages arising from construction contracts have not been discharged, however, where the contractors act "in a deceptive manner with the intent to enrich themselves at the expense of the homebuyer." Brown, 2004 WL 5851530, at *9.

In In re Green, 416 B.R. 657, 660 (Bankr. E.D. Mo. 2009), the court found that the debtor's monthly applications for funds, which contained misrepresentations regarding the amount of work completed and payments to subcontractors, constituted false representations under § 523(a)(2)(A), supporting exception from discharge. Likewise, in In re Alport, 144 F.3d 1163, 1167 (8th Cir. 1998), the court excepted debt from discharge under § 523(a)(2)(A) where the debtor, seeking payment from escrow or for change orders, presented the plaintiff with false documentation implying he had made prior payments to materialmen and subcontractors.

In In re Bren, 284 B.R. 681, 692 (Bankr. D. Minn. 2002), the debtor received mechanic's lien waivers by tendering checks to subcontractors and requesting that

7

they wait before cashing the checks.  The court held that, to be fraud, the debtor would have to know or intend that the checks would not be honored.  Id. at 693.  The debtor had a history of asking subcontractors to hold checks and usually made good on the checks which were eventually honored by the bank.  Id.  The court found that, under § 523(a)(2)(A), the debtor did not intend to fraudulently induce the homeowners to pay more money based on the lien waivers.  Id. at 694.

The court in Bren also considered whether the debtor's conduct was willful and malicious under § 523(a)(6) and found that the debtor had every intention of paying the subcontractors and performing under the contract.  Id. at 699.  His conduct may have been negligent in hindsight, but he did not intend the injury and the harm to the plaintiff.  Id.  This Court considered both § 523(a)(2)(A) and § 523(a)(6) in In re Wade, Adv. No. 03-09163, 2004 WL 3019461 (Bankr. N.D. Iowa Dec. 29, 2004), in which the plaintiffs asserted damages from the debtors' construction work on their home were excepted from discharge.  It found there was little, if any, evidence that the debtors made representations which they believed to be untrue, id. at *4, or that the debtors intended to injure the plaintiffs and targeted them for the purpose of causing financial harm.  Id. at *5.  The Court stated:  "For a multitude of reasons, the project became derailed and did not live up to anyone's expectations.  Nevertheless, problems and delays do not equal fraud or malicious intent."  Id. at *6.

## ANALYSIS

Based on the record presented, the Court concludes that Plaintiffs have met their burden to pierce the corporate veil to impose liability on Jeffrey Noack for damages arising from the contract between Plaintiffs and Advanced Custom Builders, L.L.C.  The unanswered Requests for Admissions and Mr. Scharnhorst's testimony prove that the corporation was undercapitalized, lacked separate books and did not keep its finances separate from Mr. Noack's individual finances.  The corporate formalities were not followed and the LLC is a mere sham which serves no legitimate business purpose.

Next, Plaintiffs must prove the elements of § 523(a)(2)(A) or (a)(6) to except the debt from Mr. Noack's discharge.  Plaintiffs stated at trial that they do not claim any fraud occurred in the formation of the Contract, but rather Mr. Noack made misrepresentations regarding payments to subcontractors after the beginning of construction.  The Court finds that Mr. Noack knew checks he wrote to

8

subcontractors beginning at least in the middle of August were in danger of being returned for insufficient funds. When he gave Plaintiffs mechanics lien waivers after that time, they constituted misrepresentations he knowingly made in order to receive more funds from Plaintiffs. Plaintiffs were justified in relying on the mechanics lien waivers in continuing to pay Mr. Noack and they have been injured thereby.

These facts are inferred from the surrounding circumstances. Plaintiffs first became aware one of Debtor's checks to a subcontractor was not honored in mid-August 2008. In mid-October, several subcontractors contacted Plaintiffs about Debtor's bounced checks. Mr. Noack was obviously aware that checks were not clearing his bank. [1] When he continued to write checks to subcontractors to receive mechanics lien waivers, he knew or should have known that the checks would not be honored and the subcontractors would be entitled to mechanics liens against Plaintiffs' property. Plaintiffs, on the other hand, were only aware of one problematic transaction in mid-August between Mr. Noack and Tri-State Concrete. They were justified in continuing to make payments to Mr. Noack in light of the mechanics lien waivers they received.

Based on the same facts, however, the Court concludes that Plaintiffs have failed to prove the existence of a "willful and malicious injury by the debtor" under § 523(a)(6). Mr. Noack did not deliberately injure Plaintiffs and cause them financial harm. This is evident in Mr. Noack's attempts to rectify the situation by asking Plaintiffs to front the money for the completion of the home in exchange for a promissory note from him. The fraudulent misrepresentations arising from the mechanics liens waivers and bounced checks was knowing on his part, but do not rise to the level of willfulness and maliciousness required by § 523(a)(6).

Plaintiffs request a judgment for damages, asserting that payment of all their expenses in completing the construction, plus attorney fees, is the appropriate measure of damages. This is an appropriate amount of damages for breach of contract. In the contract, Debtors agree to build Plaintiffs' home for $627,000 and agree to pay attorney fees in the event of a default. The Court, therefore, accepts Plaintiffs' estimation of damages in the total amount of $242,379.21 for Debtors' breach of contract. A judgment in this amount can be entered against the LLC

---

1 Other adversary proceedings have been filed against both Advanced Custom Builders and Jeffrey Noack seeking exception from discharge arising from Debtors' financial problems during 2008. See Adv. No. 10-09001, 10-09027 and 10-09041.

which, as it is not an "individual," is not eligible for a bankruptcy discharge under § 727(a)(1). Although the Court has pierced the corporate veil, Debtor Jeffrey Noack, an individual, is only liable for the judgment against the LLC to the extent the debt is excepted from his discharge under § 523(a)(2)(A).

The amount of damages which are the proximate result of Mr. Noack's misrepresentations under § 523(a)(2)(A) is not the same as the amount of damages arising from breach of contract. After mid-August, Plaintiffs made two payments to Debtors of $40,000 and $25,000, or a total of $65,000. The record does not identify which mechanics lien waivers were given to induce Plaintiffs to issue these two payments, or whether the waivers were based on checks that later bounced.

More relevant to the damages excepted from discharge are the seven mechanics liens filed by unpaid subcontractors on Plaintiffs' home construction, totaling $133,519.58. These debts arise from Mr. Noack's failure to pay for subcontractors' services and materials provided for Plaintiffs' home construction. From the record presented, the Court can infer that the lack of payment to subcontractors occurred in conjunction with the checks issued by Mr. Noack which were not honored but for which he received mechanics lien waivers he presented to Plaintiffs in order to receive payment. Thus, it can be gleaned from the record that the mechanics liens filed against Plaintiffs' property were the result Mr. Noack's misrepresentations to Plaintiffs regarding payments to subcontractors.

In summary, total damages for Debtors' breach of contract is the amount of $242,379.21. A portion of those damages is excepted from Debtor Jeffrey Noack's discharge under § 523(a)(2)(A) for fraudulent misrepresentations, in the amount of $133,519.58. The remainder is not excepted from Mr. Noack's discharge.

**WHEREFORE**, judgment is entered for Plaintiffs David and Elizabeth Scharnhorst and against Advanced Custom Builders, L.L.C. in the amount of $242,379.21.

**FURTHER**, judgment is entered for Plaintiffs David and Elizabeth Scharnhorst and against Debtor Jeffrey Noack in the amount of $133,519.58, which is excepted from discharge under § 523(a)(2)(A).

**FURTHER**, the remainder of the judgment entered against the LLC is not excepted from Debtor Jeffrey Noack's discharge.

**FURTHER**, judgment shall enter accordingly as a separate document.

Dated and Entered:

August 16, 2011

PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE